**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| J.H. and his parents and next of friends, L.H. and J.H., <br><br> Plaintiffs, <br><br> v. <br><br> LAKE CENTRAL SCHOOL CORPORATION, LAWRENCE VERACCO (in his personal capacity), and JOAN MACHUCA (in her personal capacity), <br><br> Defendants. <br><br> ——————————————— <br><br> LAKE CENTRAL SCHOOL CORPORATION and WEST LAKE SPECIAL EDUCATION COOPERATIVE, <br><br> Plaintiffs, <br><br> v. <br><br> J.H., by his parents and next friends, L.H. and J.H., <br><br> Defendant. | Civil Action No. 2:11-CV-228-JVB-PRC |

**OPINION AND ORDER**

J.H. is a ten-year-old boy with learning disabilities who, at the times relevant here, resided within the territory served by the Lake Central School Corporation in Indiana.¹ Autism, speech apraxia, and chronically poor health interfered severely with his ability to learn. J.H. was prone

---
¹ This Order refers to Lake Central School Corporation as "Lake Central," and Lake Central and West Lake Special Education Cooperative collectively as "the School."

to violent outbursts against adults when they would attempt to change his behavior. The School deemed him eligible for special education before he turned three.

Through his counsel and parents, however, he contends that it had become clear by 2008 that the School's programs were not working for him. When the School did not take the responsive actions his parents thought necessary, the parents requested an administrative hearing to challenge the School. The independent hearing officer ("IHO") assigned to the case ultimately decided that the School had violated statutory procedural requirements and thus deprived J.H. of the free appropriate public education ("FAPE") to which the Individuals with Disabilities Education Act ("IDEA") entitles him. *See* 20 U.S.C. § 1412(a)(1)(A) (requiring FAPE generally); *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 524 (2007) (interpreting the IDEA's definition of FAPE); *M.B. ex rel. Berns v. Hamilton Se. Schs.*, 668 F.3d 851, 853–54 (7th Cir. 2011) (demonstrating that Indiana is a state that must provide FAPE); IHO Decision, Administrative Record ("AR") 619. As "compensatory education," the IHO ordered the School to pay J.H.'s tuition for two years, up to $50,000 per year, at a "therapeutic day school" of his parents' choice. The parents chose Elim Christian School in Illinois.

The School petitioned this Court, in case number 2:11-CV-242, to overturn the IHO's decision as unsupported by the law and facts of the case. J.H. sued as well, in case number 2:11-CV-228, to be declared a prevailing party and enforce the IHO's order by means of a preliminary injunction that would establish Elim Christian School as his "stay-put placement" under the IDEA. J.H. obtained that preliminary injunction and the separate actions were consolidated. He and his parents ("the Family") now proceed on a third amended complaint, in which they invoke the IDEA and 42 U.S.C. § 1983 to recover attorney's fees and costs from the administrative hearing; educational costs that they allege haven't been reimbursed; and money damages,

apparently for their "emotional and financial stress" or "distress." (Third Am. Compl., DE 103, paras. 26, 31.) According to the third amended complaint, Veracco and Machuca are liable under § 1983 because they:

> (1) failed to ensure that School Defendant provided J.H. with a free appropriate public education; (2) took specific actions to prevent the School Defendant from providing J.H. with a free appropriate public education; (3) took specific actions to prevent the School Defendant from following the hearing officer's orders; (4) took specific actions to prevent the School Defendant from following this Court's orders; (5) took specific actions to harass Plaintiffs and to protract the litigation of the due process hearing and this litigation for the purposes of preventing Plaintiffs from exercising their rights under the IDEA, including negotiating with Plaintiffs in bad faith.

(*Id.* para. 29.) The Family claims Lake Central is liable under § 1983 for:

> (1) violating the IDEA by failing to provide J.H. with a free appropriate public education; (2) failing to implement the hearing officer's orders; (3) failing to implement th[e] Court's orders; (3) failing to timely reimburse Plaintiffs for placement at Elim during the Summer of 2011; (4) failing to timely reimburse Plaintiffs for transportation costs to Elim; (5) . . . failing to reimburse Plaintiffs' attorney's fees and costs; and (6) . . . unreasonably protracting the due process hearing and the litigation of this case.

(*Id.* para. 28.)

Lake Central, Veracco, and Machuca have moved to dismiss the third amended complaint for failure to state a claim upon which relief can be granted. The School and Family have also each moved for summary judgment as to the IDEA case, and the Family further seeks summary judgment on its § 1983 claims. This Order rules on all three motions, each of which is granted in part and denied in part, as explained below.

**A. Cross-Motions for Summary Judgment**

In the context of an IDEA appeal to a district court from an administrative decision, a "motion for summary judgment" takes on a somewhat different meaning from the one implied by Rule 56 of the Federal Rules of Civil Procedure. Instead, "where (as here) the district court

3

reviews only that evidence that was before the administrative tribunal, the motion for summary judgment is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record." *M.B.*, 668 F.3d at 860 (quotation marks, alteration, and citations omitted).[2] The court gives "due weight" to the IHO's findings of fact and reviews legal issues de novo. *See id.* (citing *Todd v. Duneland Sch. Corp.*, 299 F.3d 899, 904 (7th Cir. 2002)). "Due weight" means "considerable deference to the hearing officer"; the court "may set aside the administrative order only if . . . 'strongly convinced that the order is erroneous.'" *Alex R., ex rel. Beth R. v. Forrestville Valley Cmty. Unit Sch. Dist. No. 221*, 375 F.3d 603, 612 (7th Cir. 2004) (quoting *Sch. Dist. of Wis. Dells v. Z.S. ex rel. Littlegeorge*, 295 F.3d 671, 675 (7th Cir. 2002)). This is "akin to the standards of clear error or substantial evidence."[3] *Id.* (citing *Z.S.*, 295 F.3d at 675). The court may not "substitute [its] own notions of sound educational policy for those of the school authorities." *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206 (1982). Because the Family prevailed in the administrative proceedings, the School bears the burden of strongly convincing the Court that the IHO's decision was erroneous. *See Alex R.*, 375 F.3d at 611 ("[T]he party challenging the outcome of the administrative proceedings . . . bears the burden of proof."), 612 ("strongly convinced" standard).

The foregoing framework differs from the one that applies to the Family's motion for summary judgment as it relates to their claims under § 1983. Here, Rule 56 plays its ordinary

---

[2] On January 3, 2013, and thus before the briefing on summary judgment began, the Court declined to admit new evidence but "recognize[d that] determining whether to receive new evidence [would be] linked to its review on the merits," and so left open the possibility of later accepting additional evidence. (Order, DE 90.) Now that the summary-judgment briefs are in, no party has asked the Court to do so.

[3] When reviewing for "substantial evidence," the court must decide whether the entire record "contains 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Aegerter v. City of Delafield*, 174 F.3d 886, 889 (7th Cir. 1999) (quoting *Dilling Mech. Contractors, Inc. v. Nat'l Labor Relations Bd.*, 107 F.3d 521, 524 (7th Cir. 1997)). On review for clear error, the question is whether the court is "'left with the definite and firm conviction that a mistake has been committed.'" *Furry v. United States*, 712 F.3d 988, 992 (7th Cir. 2013) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)). *See also Z.S.*, 295 F.3d at 674–75, observing more deference by courts to more-technical administrative decisions, for discussion of the practicalities of applying varying standards of review.

role. The Family's one-paragraph argument that it is entitled to summary judgment on its § 1983 claims fails, because it identifies no particular evidence and does not show "that there is no genuine dispute as to any material fact." *See* Fed. R. Civ. P. 56(a). Though the School argues for summary judgment in its favor on the § 1983 claims in replying to J.H.'s response to its motion for summary judgment (*see* Resp. to Family's Mot. Summ. J. & Reply to Family's Resp. to School's Mot. Summ. J. 47–58, DE 127 at 44–55), no such argument was mentioned in its opening brief or the motion itself. The Court therefore declines at this time to grant summary judgment on the § 1983 claims in favor of any party.

Returning to the School's administrative appeal, the Court identifies challenges to three aspects of the IHO's decision. (*See* Mem. in Support of Mot. Summ. J. 3, DE 115 at 9 (stating four issues, which relate to three features of the decision).) According to the School, the IHO erred by finding that it deviated from the procedures required by the IDEA and so deprived J.H. of a FAPE. The School also claims error in the IHO's admission and exclusion of particular evidence, as well as his decision to award J.H. compensatory education at a private school for two years. (*Id.*) J.H. counters all of this, urging the Court to uphold the IHO's decision.

IDEA analysis depends on whether the possible violation at issue was procedural or substantive. The administrative order under review here rested on procedural grounds. (*See* AR 617–18 ("All of these procedural violations (see also [Finding of Fact] 42) certainly resulted in the loss of education opportunity. Thus, the Student has been denied a FAPE.").)

By statute:

> In matters alleging a procedural violation, a hearing officer may find that a child did not receive a free appropriate public education only if the procedural inadequacies—
>
> (I) impeded the child's right to a free appropriate public education;

5

(II) significantly impeded the parents' opportunity to participate in the decisionmaking process regarding the provision of a free appropriate public education to the parents' child; or

(III) caused a deprivation of educational benefits.

20 U.S.C. § 1415(f)(3)(E)(ii). "[P]rocedural defects do not necessarily indicate that a child has been denied a free appropriate public education; only those defects that 'result in the loss of educational opportunity' deny a child a FAPE." *M.B.*, 668 F.3d at 860 (quoting *Hjortness v. Neenah Joint Sch. Dist.*, 507 F.3d 1060, 1065 (7th Cir. 2007)).

**1.** *Reviewing the IHO's decision that the School violated J.H.'s and his parents' IDEA rights*

Synthesizing the above standards yields the first key question the Court must answer here: Has the School "strongly convinced" the Court that the IHO erred in finding that the School committed one or more procedural missteps that caused J.H. a "loss of educational opportunity"? *See M.B.*, 668 F.3d at 860 (standard for whether a procedural violation has resulted in a denial of FAPE); *Alex R.*, 375 F.3d at 611–12 (burden assignment, deferential review). To decide, the Court reviews the IHO's material findings of fact, guided by J.H.'s citations to the administrative record identifying evidentiary support for the findings. (*See* Mem., DE 131, at 3–5.)

On August 28, 2008, J.H.'s mother requested in writing that the School conduct an "assistive technology evaluation." (IHO's Finding of Fact ("FOF") 17, supported by Screening Referral Form, AR 5672.)[4] The School took until April of the following year to report such an evaluation. (FOF 21, supported by Osborne Evaluation, AR 5674.) Even at that, the May 2009 case conference committee ("CCC") ignored the report. (FOF 24, supported by Osborne testimony,

---

[4] The IHO's findings of fact are found on pages 606 through 616 of the administrative record. *See also* 511 Ind. Admin. Code 7-32-7 (defining "assistive technology device"); 511 Ind. Admin. Code 7-32-8 (defining "assistive technology service").

AR 3896–97.) J.H.'s parents did not receive the report until June 2009. (FOF 25, supported by L.H.'s Letter of Sept. 8, 2009, to Marlene Sledz, AR 5678–79.)

Also by June 2009, the parents had requested a speech and language evaluation, and they expressed concerns about the delays in completing the evaluations. (FOF 25, 26, supported by L.H.'s Letter of Sept. 8, 2009, to Marlene Sledz, AR 5678–79.) Yet despite J.H.'s impaired language and repeated attempts by J.H.'s parents to get the School to do more to help him with his language and related behavioral problems, the School did not begin a full-blown language assessment until January 19, 2010.[5] (FOF 36 ("The Student's need for speech language services was well established by December 15, 2009."), supported by April 2007 Evaluation, AR 5422, and October 23, 2009, CCC Report, AR 5367; FOF 71 ("The parents repeatedly told the School . . . that the Student's aggressive behavior was due to his frustration at not being able to communicate his needs . . . ."), supported by Parent-School Communication Notebook, AR 5493, 5507, 5533–34; FOF 83 ("The School's speech language pathologist began her speech and language testing on January 19, 2010, and tested on January 29 and March 4, 2010."), supported by Speech Evaluation, AR 4350.) That assessment found that J.H. had a "moderate-severe deficit in communication skills." (FOF 83, supported by Speech Evaluation, AR 4356.)

The IHO concluded the School "failed to timely evaluate [J.H.'s] behavior, speech and assistive technology (AT) needs," and "failed . . . to provide [him] with appropriate AT." (AR 617.) Neither the School's opening brief nor the IHO's decision analyzes the triggering and expiration of the relevant time limits as set by Article 7 of Title 511 of the Indiana Administrative Code ("Article 7"), the state law implementing the IDEA. (*See, e.g.*, School's

---

[5] The Family's briefs and the IHO's findings refer to a diagnostic evaluation performed by the School as early as 2007, when he was two or three years old, but the context in the record suggests that additional detail, as well as an update, was necessary in the years immediately leading up to the assessment that began on January 19, 2010. (*See, e.g.*, IHO's Due Process Hearing Decision, AR 617 ("The Student's mother had asked for a speech evaluation since June 2009 and yet the School failed to conduct and complete the evaluation until March 2010.").)

Mem. in Support of Mot. Summ. J., DE 115, at 29–30 (asserting "[t]he School timely evaluated J.H.'s behavior" without addressing any law making such an evaluation due by a particular time), 31–32 (claiming that "[t]he speech evaluation was conducted within the fifty (50) day timeframe required by Article 7 and cumulated into the March 19, 2010 IEP" without discussing when the 50-day period began).) This is a hole in the School's challenge to the IHO's decision, because the School bears the burden of strongly convincing the Court of error by the IHO. *See Alex R.*, 375 F.3d at 611–12.

The IHO determined further that the School violated the Indiana Administrative Code's functional-behavioral-assessment ("FBA") and behavioral-intervention-plan ("BIP") requirements by relying on inadequate data and failing to identify "antecedents," presumably for J.H.'s problematic behaviors. (*Id.* (citing 511 Ind. Admin. Code 7-32-10 (BIP) and 511 Ind. Admin. Code 7-32-41 (FBA)).)

For these reasons, the IHO decided the School's efforts fell short of FAPE. (AR 618 (citing *Bd. of Educ. v. Ross*, 486 F.3d 267, 276 (7th Cir. 2007)).) He went on to say that the School's failure to conduct a timely speech evaluation prevented it from providing speech services that allowed J.H. to progress, and that it was "clear [J.H.'s] behaviors regressed because of the untimeliness and ineffectiveness of the FBA's and BIP the School developed." (*Id.*) The IHO deemed all of these conclusions to be conclusions of law. (*See* AR 617 (heading, "Conclusions of Law").)

To classify a proposition as a finding of fact, conclusion of law, or mixture of the two is itself to draw a legal conclusion. This Court therefore owes no deference to the IHO in differentiating between his factual findings and legal conclusions. *See M.B.*, 668 F.3d at 860 (legal issues

reviewed de novo). Despite the structure of the IHO's decision, the Court discerns no reason to treat the following statements as conclusions *of law*:

> As a consequence of failing to timely evaluate the Student's AT, the School failed to . . . provide the Student with appropriate AT.
>
> * * *
>
> [T]he School failed to provide speech services that allowed the Student to progress.
>
> [T]he Student's behaviors regressed because of the untimeliness and ineffectiveness of the FBA's and BIP the School developed.

(AR 617–18.) These are more aptly classified as factual inferences that the IHO drew by considering the evidence as a whole in light of his technical expertise in education, not by applying a legal standard. After all, determining what "AT" is appropriate for a particular student with special needs, or whether a failure to provide appropriate AT has resulted from evaluating AT needs late, are matters of educational, not judicial, expertise. So is identifying the speech services that would allow a student to progress. Likewise, no statute or caselaw could help the IHO in discerning whether faults in the School's programming were to blame for the observed regression in J.H.'s behavior.

The technical-factual, rather than legal, character of these issues is important to recognize, because "courts lack the 'specialized knowledge and experience'" for "'difficult questions of educational policy.'" *Rowley*, 458 U.S. at 208 (quoting *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 42 (1973)). It's an important part of the basis for deference. *Cf. Z.S.*, 295 F.3d at 674 ("[A]dministrative proceedings often involve technical issues on which the agency is expert and the reviewing court is not."), 675 ("The more technical the issue resolved by the agency, the less likely the reviewing court is to feel comfortable second-guessing the agency's

9

resolution. As a practical matter, . . . the agency's finding will receive greater judicial respect in such a case.").

So deferring, the Court concludes that the citations to the administrative record provided above, along with still more identified by J.H. in his brief at document 131 on pages 3 through 5, constitute the "substantial evidence" that is sufficient to support the IHO's findings of fact as identified here. Moreover, the IHO could have relied on the stagnation or regression of J.H.'s scores on tests of language and behavior (AR 5632) to support his conclusion that J.H. lost educational opportunity. *See, e.g.*, *M.B.*, 668 F.3d at 860 (stating the "loss of educational opportunity" standard for whether a procedural violation has resulted in a denial of FAPE). (Whether the IHO actually did so is unclear.)

The Court is not "strongly convinced" that the two following conclusions by the IHO were wrong: First, the School violated the IDEA by "significantly imped[ing J.H.'s] parents' opportunity to participate in the decisionmaking process," *see* 20 U.S.C. § 1415(f)(3)(E)(ii)(II), for instance by delaying and withholding the results of requested evaluations. Second, the School violated the IDEA by failing to provide speech services that allowed J.H. to progress, thus "imped[ing his] right to a free appropriate public education" and "caus[ing] a deprivation of educational benefits." *See* § 1415(f)(3)(E)(ii)(I), (III).

The School has objected that the IHO allowed J.H.'s late-disclosed expert, Dr. Nowinski, to testify, but excluded the School's proposed rebuttal expert, Dr. Pratt. This objection does not undermine the Court's confidence in the IHO's conclusion that the School violated J.H.'s and his parents' IDEA rights, however. Dr. Nowinski's testimony influenced only the relief the IHO awarded, not his conclusion that an IDEA violation had occurred. (*See* IHO's Due Process Hearing Decision, AR 616 ("The evaluation conducted by Dr. Nowinski was not used in the

development and formulation of this Decision. . . . However, [her] testimony . . . regarding the services provided at therapeutic day schools in general was considered because of her extensive experience with the same.").)

The School also believes the IHO deferred too little to School personnel. To be sure, the IHO was not entitled to substitute his own opinion for those of the School administrators; instead, his task was to decide whether their actions were reasonable. *See Z.S.*, 295 F.3d at 676. But the following statements by the IHO convey that he didn't just disagree with the School's course of action; he found it unreasonable:

- "[T]he School should have convened a CCC or its team, including the parents, to develop a legal and effective FBA and BIP long before October 2009."

- "The Student's aggressive behaviors were allowed to persist and increase for far too long."

- "The Student's mother had asked for a speech evaluation since June 2009 and yet the School failed to conduct and complete the evaluation until March 2010."

(AR 617.) The IHO's decision was not the product of too little deference to educators.

The School also argues that the IHO ignored the ostensible fact that J.H. did "receive meaningful educational benefit" (DE 115 at 17), as well as "the School's evidence that it timely evaluated J.H.'s speech needs." (*Id.* at 31.) Neither contention is supported by a citation; as for the second point, it does not appear that the IHO would have reached a different conclusion had he found the School's speech evaluation timely.

## 2. Reviewing the IHO's Award of Relief

This leaves to consider the propriety of the IHO's award of relief. The IHO ordered the School to pay tuition and transportation costs for J.H. to attend a "therapeutic day treatment school" of his parents' choice for two years, up to $50,000 per year. (AR 619, 627.)

11

"Parents 'are entitled to reimbursement *only* if a federal court concludes both that the public placement violated IDEA and the private school placement was proper under the Act.'" *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 246 (2009) (quoting *Florence Cnty. Sch. Dist. Four v. Carter ex rel. Carter*, 510 U.S. 7, 15 (1993)).

The IHO awarded tuition at a "therapeutic day treatment school" of the parents' choice without finding even one fact that supports the conclusion that placement at any therapeutic day school the parents might choose would satisfy the IDEA's guarantees to J.H. As the Family nearly acknowledges (*see* Mem. Supp. Mot. Summ. J., DE 121, at 39 (conceding that the IHO "could have made additional findings regarding Elim" without identifying any such finding)), no reason was given why an unspecified therapeutic day school would improve upon J.H.'s public school. On this record, the Court is "strongly convinced" that the IHO erred. His decision reflects no consideration of one of the prerequisites to the parents' entitlement to reimbursement for private schooling. *See T.A.*, 557 U.S. at 246 (requiring for such an award that the private school be proper under the IDEA).

Should the record be supplemented with new evidence for this Court to be first to decide the appropriateness of the Elim Christian School placement? "[T]he determination of whether to allow additional evidence under [the IDEA] 'must be left to the discretion of the trial court which must be careful not to allow such evidence to change the character of the hearing from one of review to a trial de novo.'" *Monticello Sch. Dist. No. 25 v. George L. on Behalf of Brock L.*, 102 F.3d 895, 901 (7th Cir. 1996) (quoting *Town of Burlington v. Dep't of Educ.*, 736 F.2d 773, 791 (1st Cir. 1984)). Under the present circumstances, admitting new evidence would be inappropriate. One reason is that no request by a party that the Court do so is pending. Another is that the assessment of Elim Christian School's appropriateness for J.H. would almost certainly

benefit from expertise in the field of education. Having this Court take the first pass at the question would come at the excessive expense of the valuable field-specific knowledge of an independent hearing officer.

**B. School's Motion to Dismiss the Third Amended Complaint for Failure to State a Claim Upon Which Relief Can Be Granted**

In the third amended complaint, the Family seeks attorney's fees and costs, reimbursement of educational costs, and monetary damages. Claim I invokes the IDEA; Claim II rests on 42 U.S.C. § 1983. Lake Central, Veracco, and Machuca have moved to dismiss the third amended complaint in its entirety.

To withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, each claim needs the support of enough alleged facts to be "'plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The reviewing court construes all factual allegations and draws all reasonable inferences against dismissal. *Vesely v. Armslist LLC*, No. 13-3505, — F.3d —, 2014 WL 3907114 *2 (7th Cir. Aug. 12, 2014) (citing *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013)). On the other hand, mere conclusory statements, legal assertions, and recitals of the elements of a cause of action need not be accepted as true. *Id.*

Addressing Claim II first, Lake Central, Veracco, and Machuca urge that no plaintiff may recover damages under § 1983 for IDEA violations, though these movants concede that the Seventh Circuit Court of Appeals has not so held "absolutely." Indeed, in a case the movants' brief discusses, the Court of Appeals went as far as to state that § 1415(f) of title 20 of the United States Code "was enacted for the express purpose of ensuring that § 1983 claims would be available to enforce the IDEA." *Marie O. v. Edgar*, 131 F.3d 610, 622 (7th Cir. 1997). The

changes that § 1415(f) has undergone since *Marie O.* do not suggest a different conclusion today. Moreover, the author of *Brown v. Dist. 299*, 762 F. Supp. 2d 1076 (N.D. Ill. 2010), which the movants describe as finding "no right to Section 1983 damages" even after *Marie O.*, later distinguished *Brown* in another case, explaining that the plaintiff could rely on § 1983 "not to adjudicate his rights under the IDEA, but to enforce those rights as determined finally by the hearing officer." *Dominique L. v. Bd. of Educ.*, No. 10 C 7819, 2011 WL 760019 at *3 (N.D. Ill. Feb. 25, 2011). This is at least one of the purposes the Family seeks to pursue in the third amended complaint. (*See* Third Am. Compl., DE 103, para. 14 ("School Defendants refused to follow the hearing officer's order.").) Claim II cannot be dismissed on the ground that § 1983 permits no award of damages for IDEA violations.

Lake Central, Veracco, and Machuca next argue that the Family failed to allege enough specific facts to support a plausible inference of individual or municipal liability under § 1983.

The Court proceeds first with the allegations of bad faith that could support Veracco's or Machuca's individual liability. *See Brock L.*, 102 F.3d at 904 (7th Cir. 1996) (implying that bad faith constitutes a mental state that would support § 1983 liability). The Family alleged that the "School Defendants refused to follow the hearing officer's order"; and that Veracco and Machuca, in "bad faith," forbade and prevented the School from following the hearing officer's and this Court's orders. (Third Am. Compl. paras. 14, 19.) By pleading that the School's obstinacy under Veracco and Machuca's direction "forced" the Family to obtain a preliminary injunction, the Family made an inference of bad faith plausible. (*See id.* para. 15.) The factual allegations also raise a plausible inference that Veracco and Machuca knew what the IHO's orders were. (*See id.* paras. 13, 14, 17, 19.) The Family's individual § 1983 claims against Veracco and Machuca therefore withstand the motion to dismiss.

Municipal liability is a different story. The Court of Appeals has—

> identified three different ways in which a municipality or other local governmental unit might violate § 1983: (1) through an express policy that, when enforced, causes a constitutional deprivation; (2) through a "wide-spread practice" that although not authorized by written law and express policy, is so permanent and well-settled as to constitute a "custom or usage" with the force of law; or (3) through an allegation that the constitutional injury was caused by a person with "final decision policymaking authority."

*Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005) (quoting *McTigue v. City of Chi.*, 60 F.3d 381, 382 (7th Cir. 1995)). "In order to have final policymaking authority, an official must possess responsibility for making law or setting policy, that is, authority to adopt rules for the conduct of government. The mere authority to implement pre-existing rules is not the authority to set policy." *Killinger v. Johnson*, 389 F.3d 765, 771 (7th Cir. 2004) (quotation marks, citations, and alterations omitted).

The Family's opposition to the motion to dismiss concedes by omission that the Family is not claiming an express policy or widespread practice. This leaves to consider only the third way of establishing municipal liability mentioned by *Calhoun,* 408 F.3d at 379, which is showing injury "caused by a person with 'final decision policymaking authority.'" In reference to this inquiry, the Court acknowledges that the Family has alleged that its injuries were caused by Veracco and Machuca, and that Veracco and Machuca are the superintendent and special-education director, respectively, of Lake Central School Corporation. But the Family does not allege that either Veracco or Machuca had the authority to "'adopt rules for the conduct of government.'" *Killinger*, 389 F.3d at 771 (quoting *Rasche v. Vill. of Beecher*, 336 F.3d 588, 599 (7th Cir. 2003)). Indeed, the third amended complaint suggests that each had a role of merely "implementing pre-exsting rules." *Id*. That is, the Family alleges that Veracco was "charged with enforcing the IDEA and all state laws on behalf of students and parents attending School Defendant's schools." (Third Am. Compl. para. 5.) Machuca allegedly played the similarly

15

limited role of "ensuring that students eligible to receive services under the IDEA receive a free appropriate public education and . . . that students['] and parents' rights under the IDEA are protected." (*Id.* para. 6.) That's not enough for municipal liability, *see Killinger*, 389 F.3d at 771, so Claim II must be dismissed as against Lake Central.

Lake Central attacks Claim I, as well, contending that emotional distress is not compensable under the IDEA. Lake Central is correct on this point. *See McCormick v. Waukegan Sch. Dist. No. 60*, 374 F.3d 564, 569 (7th Cir. 2004) (ruling out an IDEA remedy for emotional injury); *Charlie F. ex rel. Neil F. v. Bd. of Educ.*, 98 F.3d 989, 991 (7th Cir. 1996) ("[D]amages are not 'relief that is available under' the IDEA.").

Lake Central attempts to knock out the rest of Claim I with the defense that "the School was merely exercising its legal right to seek judicial review of the hearing officer's order." (Mem. Supp. Mot. Dism., DE 109, at 10.) But Claim I doesn't rely on the fact that the School appealed the IHO decision. (*See* Third Am. Compl. paras. 24–25 (listing the things that the Family claims Lake Central, Veracco, and Machuca did to violate the Family's rights under the IDEA, and not mentioning the School's appeal of the IHO decision).)

## C. Conclusion

Each motion for summary judgment (DE 114, 120) is **GRANTED IN PART AND DENIED IN PART**. In particular, the Court **AFFIRMS** the IHO's conclusion that the School violated the Family's rights under the IDEA, but **VACATES** his order that the School pay tuition and transportation costs for J.H. to attend a "therapeutic day treatment school" of his parents' choice for two years, up to $50,000 per year. The Court **REMANDS** to the IHO to consider explicitly, in a manner consistent with this Order, whether the Family is entitled to reimbursement for J.H.'s

private placement. *See T.A.*, 557 U.S. at 246 (requiring for reimbursement that the private school be a proper placement under the IDEA); *Reid ex rel. Reid v. D.C.*, 401 F.3d 516, 526 (D.C. Cir. 2005) ("[T]he district court may determine that the 'appropriate' relief is a remand to the hearing officer for further proceedings."). The requests for summary judgment on the § 1983 claims are **DENIED**.

The motion to dismiss (DE 108) is **GRANTED IN PART AND DENIED IN PART**. Claim I of the third amended complaint is **DISMISSED** insofar as it seeks monetary damages, *see Charlie F.*, 98 F.3d at 991, and Claim II is **DISMISSED** as against Lake Central. In all other respects, the third amended complaint stands.

**SO ORDERED** on September 30, 2014.

    s/ JOSEPH S. VAN BOKKELEN
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE